19 - 3 2 0 2 BPG     19 = 3 2 0 3 BPG     19 - 3 2 0 4 BPG

FILED_____ENTERED
____LOGGED____RECEIVED

19 - 3 2 0 5 BPG

OCT 18 2019        Loveland

CLERK U.S. DISTRICT COURT
AT BALTIMORE
DISTRICT OF MARYLAND
BY _____ DEPUTY

# AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Autumn Brown, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

This Affidavit is submitted in support of an application for a warrant, pursuant to 18 U.S.C. § 2703 and Rule 41 of the Federal Rules of Criminal Procedure, to search the electronic accounts described below (the "TARGET LOCATIONS"), for evidence concerning Interstate Receipt of Stolen Property, (18 U.S.C. § 2315), Affecting Interstate Commerce by Robbery, (18 U.S.C. § 1951), and Obstruction of Justice, (18 U.S.C. § 1512(c) and/or 18 U.S.C. § 1519).

1. The Google account associated with the e-mail address shahsempire1@gmail.com (Attachments A-1, B-1);

2. The Google account associated with the e-mail address wshah09@gmail.com (Attachments A-1, B-1);

3. The Waze account associated with the username usa_p78ztr96 and phone number 18048677933 (Attachments A-1, B-1);

4. The Instagram account associated with username cellfoneclinic, user ID 3739796830, and phone number 18048677933 (Attachments A-2, B-2);

5. The Yahoo account associated with the e-mail address waqasshah11@yahoo.com (Attachments A-3, B-3);

6. The Yahoo account associated with the e-mail address Wshah2@yahoo.com (Attachments A-3, B-3);

7. The Ebay account associated with the e-mail address bundslapper@aol.com Attachments A-4, B-4);

1

1.     I have been a sworn law enforcement officer since 2000. I am currently a Special

Agent with the Federal Bureau of Investigation and have been so employed since 2006. During my

employment as an FBI Agent, I have been assigned to investigate violations of federal law including

bank robbery, Hobbs Act Robbery, and offenses involving the sale and distribution of illegal

narcotics. I have training and experience in the area of cellular analysis, interview and interrogation,

and evidence recovery.

2.     Since this Affidavit is being submitted for the limited purpose of securing a search

warrant, I have not included each and every fact known to me concerning this investigation. I have

set forth only the facts that I believe are necessary to establish probable cause to believe that evidence,

fruits, and instrumentalities of the violation of Interstate Receipt of Stolen Property, in violation of

18 U.S.C. § 2315 and Obstruction of Justice, in violation of 18 U.S.C. § 1512(c) and/or 18 U.S.C. §

1519, are located within the TARGET LOCATIONS.

## PROBABLE CAUSE

3.     My investigation has found evidence that shows that on August 22, 2017, WAQAS

ALI SHAH purchased 21 stolen iPhone cell phones, worth approximately $15,317.00, from

STEPHON TATE. Cell phones that TATE and DELONTE GIBSON had earlier that evening

obtained during an armed robbery they committed at a Verizon Wireless store located at 1605

Whetstone Way in Baltimore, Maryland.

4.     At approximately 6:45 PM, GIBSON entered the Verizon Wireless store. He was

wearing black pants, a black hoodie, a black Adidas hat, and grey sneakers. Shortly thereafter, TATE

entered the store with his face covered. He had on slim black pants, a grey Washington Redskins

shirt over a white tank top, and black sneakers. Around his shoulder was a black Nike duffel bag. He

walked directly to the backroom of the store where the safe was located.

2

5. GIBSON grabbed the victim clerk and forced her into the backroom of the store. GIBSON's hand was in his pocket, indicating that he had a gun. GIBSON and TATE directed the clerk to open the safe. She twice failed to enter the correct code to unlock the safe.

6. After the second failed attempt, the clerk observed GIBSON rack the gun that he had in his pocket. She also heard him say something like, "If you don't open it this time, you know what it is," referring to the gun. The clerk then successfully opened the safe. TATE and GIBSON then took 21 cellular phones, all Apple iPhones, and placed them in the black Nike duffel bag carried by TATE. A surveillance image of GIBSON and TATE stealing the iPhones is below.



7. TATE exited out of the store's rear entrance with the phones; GIBSON exited out of the store's front entrance. GIBSON and TATE met outside the store and fled in GIBSON's gold Infiniti model SUV with temporary tags.

8. Immediately after the robbery, at 7:52 p.m., 7:53 p.m., and 7:55 p.m., TATE called SHAH. Earlier the day previous, TATE had sent SHAH a text message, telling SHAH, "I'll have something for you tonight" and "it will be late like 10." SHAH responded, "That's good."

3

9.      Unbeknownst to TATE and GIBSON, in addition to the 21 phones, they also took a GPS tracker, and the Baltimore City Police Department (BCPD) soon began to track GIBSON and TATE who, based on GPS data, were headed southbound into Virginia.

10.     TATE continued to call SHAH, placing six phone calls to him between 7:56 p.m. and 8:08 p.m. Furthermore at approximately 8 p.m., TATE sent SHAH a text message stating, "Bro I'm ready now". SHAH responded, "Text me when you 15 mins away." At 8:16 p.m., SHAH returned TATE's calls, calling him twice.

11.     At approximately 8:48 p.m., Fairfax County investigators received a "be on the lookout" notification from BCPD for the vehicle and suspects involved in the robbery. According to the GPS tracking data, the tracker was in the vicinity of 11700 Sunrise Valley Drive in Reston, Virginia. Multiple Fairfax County Police Department officers responded to the scene and continued to receive information concerning the location of the tracker—which eventually became stationary in the area—as well as the suspects and vehicle involved in the Verizon Wireless store robbery. The officers were to be looking for (1) a gold Infiniti vehicle with temporary tags; and (2) two black males—one wearing a black baseball hat, a black hoodie, and black shoes and another wearing a white tank top, black pants, and black shoes.

12.     Shortly after arriving to the scene, Fairfax County Police Department located a vehicle matching the description of the getaway vehicle used in connection the Verizon Wireless robbery: an unoccupied gold Infiniti SUV with temporary tags in the parking lot of 11760 Sunrise Valley Drive and the vehicle was warm to the touch.

13.     At approximately 9 PM, officers observed a suspect matching the description of one of the robbers, later identified as TATE, and SHAH walking in the direction of the gold Infiniti suspect vehicle.

4

14. As stated above, TATE's appearance matched the description of one of the robbers. TATE was wearing a white tank top and black jeans. SHAH asked officers if they needed to move their vehicle. Officers asked which vehicle was theirs and SHAH pointed at the gold Infiniti and stated something like, the "second one in." At that time, SHAH and TATE were both ordered to the ground, detained and placed into police vehicles.

15. Shortly thereafter, an Officer observed an individual, later identified as GIBSON, who was walking in the area of the Infiniti SUV and whose appearance matched the description of the other robber from the Verizon Wireless store robbery. Law enforcement approached GIBSON and asked him if he lived in the area. GIBSON became defensive in his answers and began to back away from law enforcement. Eventually, GIBSON told law enforcement that he got to the area in a vehicle. Law enforcement asked if it was the gold Infiniti SUV, and GIBSON indicated that it was, stating that the gold Infiniti SUV was his vehicle. GIBSON was then placed in handcuffs.

16. GIBSON, TATE, and SHAH were arrested shortly thereafter and arrangements were made for their transport from the scene. TATE was searched incident to his arrest. $4,491 dollars was seized from TATE's pocket, including 43 $100 bills.

17. Law enforcement brought SHAH back to the Fairfax County Police Department. Two iPhones, which were seized incident to SHAH's arrest, were secured there SHAH advised that he did not want to answer any questions without a lawyer present.

18. Fairfax County Police Department secured a state warrant for SHAH for receiving stolen property, and SHAH was held on a $2500 bond. During the booking process, SHAH told the Magistrate that (1) he owned a cell phone store named the Cell Phone Clinic; (2) was a student at George Mason University; and (3) provided the address of his business as his home address. He further stated that he stays at his brother's apartment from time to time.

5

19.     While law enforcement officers were still on scene, they learned that SHAH's brother, Syed Shah, who lived at 11760 Sunrise Valley Drive, Apt. 914, had called the police and asked to speak with law enforcement. Fairfax County Police Department went to Apartment 914, spoke with Syed Shah, and informed him that they were in the process of obtaining a search and seizure warrant for his apartment.

20.     Syed Shah informed officers, among other things, that (1) he was asleep when he believed his brother entered the apartment; (2) when he woke up and came out of the living room, his brother was gone, but there were two bags sitting in the middle of the living room floor; (3) he moved the items to a bedroom where his brother stays on occasion; and (4) his brother owns a cell phone repair business in Manassas, Virginia called the Cell Phone Clinic.

21.     On August 23, 2017, law enforcement obtained a search and seizure warrant for 11760 Sunrise Valley Drive, Apt. 914. The warrant was authorized by a Magistrate at around 1:00 a.m.

22.     At approximately 1:34 a.m., law enforcement executed the warrant. There, they located a black Nike gym bag—identical to the bag used in connection with the robbery of the Verizon Wireless store on Whetstone Way—which contained 21 phones stolen during the robbery. Law enforcement also found what appeared to be a handwritten ledger.

23.     The ledger appeared to list the price of the phones sold to SHAH by GIBSON and TATE—$4,300—and was consistent with the 43 $100 bills recovered from Mr. TATE's pocket after his arrest. The model, size, and quantity of the items listed on the ledger corresponds to the model, sizes, and quantities of the phones taken during the robbery and located in the apartment. The ledger was written on the back of an envelope bearing SHAH's name and the address of his parents.

A photo of the ledger is below:



24. State law enforcement obtained warrants to search the below listed phones recovered from SHAH, which they executed:

**Property #1118815 - Apple iPhone 6S (Sprint) 16GB**

**Make:** Apple
**Model:** iPhone 6S (A1688)
**Color:** Pink/White
**FCCID:** BCG-E2946A
**IC:** 579C-E2946A
**IMSI:** 310120117398644
**ICCID:** 89011201000173986447
**UDID:** 0f1f0cf7507d6146b2c8e7dd319206e8f9a13aba
**MSISDN (Phone Number):** 804-867-7933
**Passcode Pattern:** Unknown (Locked)
**iOS:** 10.3.3
**SIM:** 89011201000173986447 (Sprint)

**Property #1118817 - Apple iPhone 7 (Mango) 32GB**

**Make:** Apple
**Model:** iPhone 7 (A1778)
**Color:** Black
**FCCID:** BCG-E3091A
**IC:** 579C- E3091A
**IMSI:** 310260847367677
**IMEI:** 353844087913558
**ICCID:** 8901260841173676779
**UDID:** 2c7e30b61a7dc516e2dda0cb06e6dc1054a799f9
**Passcode Pattern:** None - Had Been Reset
**IOS:** 10.3.3
**MSISDN (Phone Number):** 443-854-8923
**SIM:** 8901260841173676779 (Mango)



25.     The black iPhone 7 (A1778), IMEI:353844087913558, appeared to have been remotely wiped and its content deleted. When the phone was turned on by a state investigator, it was apparent that the phone had been reset, as the investigator saw a "Hello" welcome screen and was prompted to setup the phone as if it were new. The investigator's report noted that if an unencrypted backup is located, it is possible the backup could be examined.

26.     On August 16, 2018, FBI obtained a federal warrant to search GIBSON's, TATE'S and SHAH's cellular devices. During the execution of the warrant, investigators learned from data on SHAH's iPhone 6S that the iPhone was connected to an iCloud account with a listed Apple ID of bundslapper@aol.com.

27.     A review of the contents of the pink and white iPhone 6S (A1688), IMEI: 35856507854094, revealed that the phone was in fact used by SHAH as the phone contained: numerous sent text messages where SHAH referred to himself by name, photographs of SHAH himself, and e-mail references and transmissions for a number of e-mail accounts that contain references to Shah's name (shahsempire1@gmail.com , waqasshah11@yahoo.com , Wshah2@yahoo.com , wshah09@gmail.com , and wshah2@icloud.com ). Shah's Empire is the

8

name of the Virginia company created by SHAH that was doing business as Cell Phone Clinic. Cell Phone Clinic was the name of a store operated by SHAH in Manassess, Virginia. A review of the contents of the pink and white iPhone also showed that TATE and SHAH had and extensive contact via phone call and text message in the weeks leading up to the August 22, 2017 robbery of the Verizon Wireless store, as well as on the day of the robbery. A review of the contents of the pink and white iPhone further revealed that SHAH had numerous other electronic accounts, including an AOL e-mail account, bundslapper@aol.com ; an Instagram account with the username "cellfoneclinic" and a USER ID of "3739796830" ; and a Waze account with the username "usa_p78ztr96".

28.   A review of the pink and white iPhone's contents further revealed contact between TATE and SHAH both before and after a robbery of a Verizon Wireless store located at 6480 Dobbin Center Way, Suite C in Howard County, Maryland on August 11, 2017 at approximately 8:55 p.m. Shortly before the robbery, at 8:31 p.m., TATE called SHAH. And at 8:34 p.m., SHAH called TATE.

29.   During the August 11, 2017 robbery, three individuals entered the store, and one told the clerk something like, "Take us to the vault." The clerk did so, opened the vault, and the robbers ultimately stole more than $17,500 worth of cellular phones. At 9:14 PM, about 20 minutes after the robbery, TATE called SHAH. He and SHAH then engaged in a serious of text messages, including messages in which SHAH provided an address of "11760 Sunrise Valley Dr. Reston, VA 20191" and in which SHAH told TATE, "Ok don't bring other people" and "I wouldn't want you to bring people to my house." TATE responded by providing his "ETA" or estimated time of arrival as "20 minutes".

30.   After this message, Cell Site analysis puts both SHAH and TATE in the area of Sunrise Valley Drive at the same time. Accordingly, investigators believe that SHAH and TATE met at or around 11760 sunrise Valley Drive to exchange money for the stolen phones. At 10:58 p.m., SHAH

texted TATE "I owe you 4530$". An examination of SHAH's pink and white iPhone 6S (A1688), IMEI: 35856507854094 recovered a photograph of a ledger that memorialized the transaction, which was taken minutes later—at 11:03 p.m. A photograph of the ledger and screen capture is below.



31. The ledger listed the following information concerning the purchased phones: model (e.g., iPhone 7, 7+, Samsung Galaxy 7), size (e.g., 32 gigabytes, 128 gigabytes), the quantity of phones being purchased, and the price. The model, size, and quantity of the items listed on the ledger corresponds nearly identically to the model, sizes, and quantities of the phones taken during the robbery of the Verizon Wireless store on Dobbin Center Way, except that SHAH appears to have purchased two fewer phones than were stolen during the robbery. It is believed TATE received

$4,000 that night and was going to be paid $4530 listed at the bottom of the ledger the next day based on their text message exchange and supporting Cell Site data.

32. FBI also obtained records from Apple for the iCloud account information associated with the black iPhone 7 (A1778), IMEI 353844087913558 recovered from SHAH. Those records indicated that the black iPhone 7 was associated with the e-mail address bundslapper@aol.com and the subscriber information listed Waqas Shah as the name associated with that account. The records further showed that Waqas Shah registered the black iPhone on 8/8/2017 using the bundslapper@aol.com e-mail address. Records from iCloud further revealed a post uploaded to Facebook advertising SHAH's Cell Phone Clinc store in Manasses, Virginia. The post, from October 2016, offered a free sealed, in the box Verizon iPhone 7 128 GB that would be given away for free if a certain number of "likes" was reached. The post listed the Instagram page of "Cellfoneclinic".

33. A review of the contents from SHAH's AOL e-mail account, bundslapper@aol.com and his iCloud account further revealed evidence that SHAH, within a day of being released from jail on August 23, 2017, initiated the remote erasure of numerous iPhones linked to his iCloud account. A review of the contents of the bundslapper@aol.com e-mail account further showed that SHAH received e-mails from Apple indicating that remote erasures had been initiated for a black in color (front) iPhone and a white in color (front) iPhone. Further review of the bundslapper@aol.com e-mail account showed numerous e-mails from ebay to the bundslapper e-mail address and addressed to "Waqas" regarding purchases and sales SHAH made on ebay and messages he received or sent concerning those purchases and sales.

34. For instance, on May 23, 2017, SHAH received an e-mail to his bundslapper@aol.com e-mail account from an ebay user concerning his posting for sale of a

11

"Samsung Galaxy S8 SM-G950U – 54 GB – Midnight Black (Sprint) Smartphone". The message from the user included the following:

> hello,
>
> i would be interested i have a few questions. please confirm the phone has no scratches dents or cracks. and lastly is it possible for you to ship to bahrain ? i believe the bad esn is only applicable in usa and would work internationally.
>
> if you can get back to me with an economical shipping quote to bahrain with tracking.

35.     I believe from my investigation and knowledge related to this case and the market for stolen cell phones that "esn" refers to "electronic serial number" and that this message from the potential buyer on ebay suggests that SHAH was selling a cell phone that had been "blacklisted" (designated in a central electronic database as being blocked for access to cellular service) in an attempt to prevent the phone from being used, possibly because the phone was reported lost or stolen.

36.     Investigators also obtained records from Craigslist related to posts SHAH made using his shahsempire1@gmail.com . As part of those records, investigators obtained numerous posts related to SHAH's practice of buying and selling cell phones. For example, in one post on May 3, 2017, Shah, using his shahsempre1@gmail.com account writes: "I am buying all iPhone 7 and 7+. Need someone who can get 5 or move phones at a time. I pay top $$$$."

37.     On May 30, 2018, TATE pleaded guilty in this District Court to one count of Robbery Affecting Commerce, based on his robbery of the Verizon Store on August 22, 2017, and one count of Aggravated Identity Theft. On June 20, 2018, GIBSON pleaded guilty in the District Court to Robbery Affecting Commerce, based on his robbery of the Verizon Store on August 22, 2017.

12

38.     On February 21, 2018, SHAH was indicted with one count of Interstate Receipt of Stolen Property (18 U.S.C. § 2315) for his purchasing the stolen merchandise from the August 22, 2017 robbery. On June 26, 2019, a federal grand jury returned a superseding indictment charging Shah with another count of Interstate Receipt of Stolen Property for his purchasing the stolen merchandise from the August 11, 2017 robbery.

39.     On September 3, 2019, a federal trial commenced in the case of *United States v. Waqas Shah* before Judge Russell. That case ended in a mistrial due to a jury conduct issue. During the trial, SHAH elected to take the stand and testify. Among other admissions, SHAH admitted, in substance, the following:

- He used and owned both the pink and white iPhone 6S (A1688), IMEI: 35856507854094 associated with phone number 18048677933 and the black iPhone 7 (A1778), IMEI:353844087913558.

- After SHAH was arrested, knowing that his two phones (the pink and white iPhone 6S (A1688), IMEI: 35856507854094 associated with phone number 18048677933 and the black iPhone 7 (A1778), IMEI:353844087913558) had been seized by police as evidence, SHAH initiated the remote erasure of both of those phones.

- After SHAH was arrested, he also initiated the remote erasure of a number of other phones.

- He did in fact purchase the phones from TATE on the night of August 22, 2017 following TATE's robbery of the Verizon store on Whetstone Way in Baltimore.

- During SHAH's purchasing of the stolen phones from TATE on the night of August 22, 2017, SHAH testified in substance that, SHAH identified that one of the 22 boxes of iPhones presented to SHAH by TATE for purchase appeared to be different than the others. Accordingly, SHAH opened that one box (and none of the other 21 boxes) and located what

appeared to be a mother-board or computer chip type object inside of it. Per the substance of his testimony, SHAH then handed TATE the mother-board/computer chip type object and SHAH watched as TATE took that object over to near a sink located in the room where they were meeting. SHAH then observed TATE fiddle with the object, and then discard it into a trashcan. SHAH and TATE then completed the sale/purchase of the other 21 phones. (My investigation has uncovered evidence that this computer chip/mother board object was the GPS tracker that allowed law enforcement to find SHAH, TATE, and GIBSON on the night of August 22, 2017 after the robbery.)

## **GOOGLE ACCOUNTS**

40.      Google provides numerous free services to the users with a Google account. Some of services include, Gmail, YouTube, Voice, Blogger, Google+, Hangouts, Android, Photos, Drive, Location History, Waze, and Search and Browsing History. Gmail is a web based email service. YouTube is a free video sharing website that allows users upload, view and share videos. Voice is Google's calling, voicemail transcription, and text messaging service. Blogger is Google's free weblog publishing tool for sharing text, photos, and video. Google+ is a forum to share photos, videos, and other information with other users. Android is Google's open source operating system used for mobile devices. Photos stores images for a broad range of Google products. Drive is Google's online storage service for a wide range of file types. Waze is a turn-by-turn navigation application that provides real-time traffic updates and accordingly provides, stores, and disseminates location information.

41.      I know from my training and experience that records and information recovered from Google Accounts can provide valuable evidence of crimes. For example with respect to affecting interstate commerce by robbery, location, search, and browsing history can provide evidence in the

14

form of showing that a Target searched for information associated with a robbery target, or was located near the scene of the robbery. Targets may also search for information related to the sale of stolen merchandise. Additionally, I know that Gmail and Google Hangouts offer chatting functionality that can be used on a mobile device, such as a cellular phone. Such chat function can be used between coconspirators to discuss criminal activities.

## YAHOO ACCOUNTS

42. Oath Holdings Inc. (d/b/a Yahoo) provides numerous free services to the users with a Yahoo account. Some of the services include Mail, Flickr, and Messenger. Yahoo Mail is a web based email service. Flickr is an image and video hosting website that offers private and public image storage. A user uploading an image can set privacy controls that determine who can view the image. Yahoo Messenger is an instant messaging service that provides text and voice communication. Users can also share files and images through the Messenger service.

## INSTAGRAM

43. Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

44. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the

tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

45.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

46.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

47.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile. Users on Instagram may also search Instagram for other users or particular types of photos or other content. For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

48.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

49.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

## eBAY

50.     eBay Inc. is an American e-commerce corporation based in San Jose, California that facilitates consumer-to-consumer and business-to-consumer sales through its internet website. eBay records and maintains information regarding bids, transactions and sales conducted by users of eBay's website. eBay also records and maintains information regarding communications made by and between users who make transactions on eBay's website.

## CONCLUSION

51.     Based on the foregoing, I respectfully submit that there is probable cause to believe that the aforementioned federal statutes have been violated and that there is probable cause to believe that evidence of these crimes can be found in the TARGET LOCATIONS.

52.     I thus respectfully request that the Court issue a search warrant to search the items listed in Attachment A-1, A-2, A-3, and A-4 of this Affidavit, to seize any items located pursuant to the search as described in Attachment B-1, B-2. B-3, and B-4.


_____
Autumn Brown, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this ___3rd___ day of ___October___ , 2019.

_____
HONORABLE BETH P. GESNER
UNITED STATES CHIEF MAGISTRATE JUDGE

## **ATTACHMENT A-1 – Google, LLC**

This warrant applies to information associated with the Google and Waze accounts listed below that are stored at premises owned, maintained, controlled, or operated by Google, LLC, a business with offices located at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

- shahsempire1@gmail.com

- wshah09@gmail.com

- Waze account associated with username "usa_p78ztr96" and phone number 18048677933

## ATTACHMENT B-1 – Google, LLC

**I.     Files and Accounts to be produced by Google, LLC between May 1, 2017 and the March 1, 2018.**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of Google, LLC including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Google or have been preserved pursuant to a preservation request under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A-1:

### A.  Google Account Information

a.      Google account registration information, including name, user-specified contact information, recovery email address, recovery SMS number, account creation timestamp and IP address, and a list of Google services the account holder has enabled or accessed;

b.      Account change history IP addresses and associated timestamps;

c.      Google account login and logout IP addresses and associated timestamps;

d.      All means and sources of payment for all Google products and services (including complete credit or bank account numbers), and detailed billing records;

e.      All cookie and user-specific advertising data, including third-party cookies;

### B.  Gmail Account Information

a.      Gmail specific subscriber information, login and logout IP addresses and associated timestamps;

b.      Gmail specific non-content email header information, originating message IP addresses, and account settings;

c.      The contents of all e-mails, attachments and chat messages stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination e-mails sent addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

d.      Contents of all available deleted emails;

### C.  YouTube Account Information

a.      YouTube specific subscriber information, including date of birth and country;

b.      YouTube specific login and logout IP addresses and associated timestamps;

c.      YouTube video upload IP addresses and associated timestamps;

d.      Copies of all publically available videos;

e.      Copies of all private videos and associated video information;

f.      Copies of all private messages;

g.      All Channel or Video comments;

h.      All contacts;

## D. Google Voice Account Information

a.      Voice specific subscriber information, including signup IP and associated timestamp and user-provided name;

b.      Call and text logs;

c.      All account settings and account change history;

d.      Contents of all voicemail messages and text messages;

## E. Blogger Account Information

a.      Blogger specific subscriber information, including Blog registration information, Blog creation IP and timestamp, Blog owner/admin subscriber information, and post or comment owner information;

b.      All contents of private blog posts and comments;

## F. Google+ Account Information

a.      Google+ specific subscriber and IP address information, including associated timestamps;

b.      All IP addresses and timestamps associated with Posts, Comments, or Photos;

c.      All Content/Activity Stream, including posts, comments, and photos;

d.      All contacts/Circles;

e.      Google+ Profiles;

## G. Android Account Information

a.      Android specific subscriber and IP address information, including associated timestamps;

b.      All device IDs, IMEIs, and MEIDs associated with the target account(s);

c. Timestamps, including device registration, first check-in, and last check-in;

d. All Google accounts tied to the Android device(s) if any;

e. Android hardware information;

f. Cell carrier/service provider;

g. All apps downloaded to the device;

## H. Photos Account Information

a. Photos specific subscriber and IP address information, including associated timestamps;

b. All upload IP addresses and associated timestamps;

c. Contents of all Photos and Albums, including all exif data included by the user as part of the upload;

## I. Drive Account Information

a. Drive specific subscriber and IP address information, including associated timestamps;

b. All upload IP addresses and associated timestamps;

c. All Drive content, including Docs, Sheets and Slides;

## J. Google Location and Search History Information

a. All location history with associated timestamps on the dates listed below:

|   | Date |
|---|------|
| 1 | 8/10/2017 to 8/13/2017 |
| 2 | 8/21/2017 to 8/25/2017 |

b. All search history and associated timestamps, including all "clicks" and "queries;"

## K. Waze Location and Search History Information

a. Waze specific subscriber information, login and logout IP addresses and associated timestamps;

b. Waze specific non-content information, including account settings;

c.     All location history with associated timestamps on the dates listed below:

|   | Date |
|---|------|
| 1 | 8/10/2017 to 8/13/2017 |
| 2 | 8/21/2017 to 8/25/2017 |

d.     All Waze search history and associated timestamps, including all "clicks" and "queries;"

e.     All Waze locations saved by the user;

## II.     Information to be Seized by Law Enforcement Personnel

a.     Any and all records that relate in any way to the account described in Attachment A-1 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery); 18 U.S.C. § 2315 (Interstate Receipt of Stolen Property); and 18 U.S.C. §§ 1512(c) and 1519 (Obstruction of Justice), .including:

1. All records, information, documents or tangible materials related to Affecting Interstate Commerce by Robbery or the sale of ill-gotten proceeds thereof, including the sale of any stolen cellular telephones or other merchandise; any and all communications related to the preparation for or completion of the robberies or the sale of the proceeds thereof.

b.     All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

c.     Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

d.     Evidence of the times the account was used;

e.     All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

f.     Passwords and encryption keys, and other access information that may be necessary to access the account and other associated accounts;

g.     Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

h.     All existing printouts from original storage which concern the categories identified in subsection II.a; and

i.     All "address books" or other lists of contacts.

## III.     The government's search

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google LLC. (hereinafter "Google"), and my official title is _____. I am a custodian of records for Google. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.    such records were kept in the ordinary course of a regularly conducted business activity of Google; and

c.    such records were made by Google as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                              Signature

## ATTACHMENT A-2 TO SEARCH WARRANT

### Property to Be Searched

a. Instagram user "cellfoneclinic", user ID 3739796830, phone number

18048677933, having been used by and associated with Waqas Ali Shah.

that is stored at premises owned, maintained, controlled, or operated by Instagram, a company

headquartered at 1601 Willow Road, Menlo Park, California 94025.

## ATTACHMENT B-2 TO SEARCH WARRANT

### Particular Things to be Seized

To the extent that information described in Attachment A-2 is within the possession, custody, or control of Instagram, Instagram is required to disclose the following information, dating back from May 1, 2017 through March 1, 2018, to the government for:

      a. Instagram user "cellfoneclinic", user ID 3739796830, phone number

         18048677933, having been used by and associated with Waqas Ali Shah.

in any form, in the possession of Instagram, headquartered at 151 University Avenue, Palo Alto, California, 94301, which pertain to Instagram user "cellfoneclinic", including but not limited to:

      a. Account contact information (including subscriber's full name, birth date, address, telephone numbers, contact e-mail addresses, screen names/profiles, websites, account/user identification numbers, status of account, duration of account, method of payment, and other personal identifiers).

      b. All records pertaining to communications between Instagram and any person regarding the user or user's Instagram account (including terms of service, contacts with support services and records of actions taken.

      c. The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service including any credit card or bank account number).

      d. All connection logs and other records of user activity for the account (method of connection, data transfer volume, the subscriber account associated with the connection, telephone caller identification or ANI records, and other connection information, such as the Internet Protocol (IP) address of the source of the connection). All IP logs, including all records of the IP addresses that logged into the account.

      e. All Photoprints, including photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them.

      f. All Neoprints, including profile contact information; Mini-Feed information; status updates, links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Instagram user identification numbers;

groups and networks of which the user is a member, including the groups' instagram group identification numbers; future and past event postings; rejected or pending "Friend" requests; comments, gifts; pokes; tags; and information about the user's access and use of Instagram applications.

g. All information about the user's access and use of Instagram Marketplace.

h. All privacy settings and other account settings.

i. All other communications and messages made or received by the user, including all private messages and the existence and content of all e-mail sent from, sent to, or received by, delivered or undelivered (read or unread).

j. File transfer data uploaded or downloaded by the user.

k. Any information used by the user for web pages or web sites.

l. Logs maintained for any names on the "Friend list" described above, and for the senders and recipients of the e-mail described above, for any such names, senders and recipients who are subscribers of customers of Instagram.

m. All exchangeable Image File Format (EXIF) data.

n. All stored communication, both retrieved and unretrieved, and other files controlled by user accounts owned by:

   i. Instagram user "cellfoneclinic", user ID 3739796830, phone number 18048677933, having been used by and associated with Waqas Ali Shah.

## II.   Information to be seized by the government

Any and all records that relate in any way to the account described in Attachment A-2 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery); 18 U.S.C. § 2315 (Interstate Receipt of Stolen Property); and 18 U.S.C. §§ 1512(c) and 1519 (Obstruction of Justice), including:

a. All records, information, documents or tangible materials related to Affecting Interstate Commerce by Robbery or the sale of ill-gotten proceeds thereof, including the sale of any stolen cellular telephones or other merchandise; any and all communications related to the preparation for or completion of the robberies or the sale of the proceeds thereof;

b. All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

c. Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

d. Evidence of the times the account was used;

e. All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

f. Passwords and encryption keys, and other access information that may be necessary to access the account and other associated accounts;

g. Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

h. All existing printouts from original storage which concern the categories identified in subsection II.a; and

i. All "address books" or other lists of contacts.

**III. The government's search**

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity

in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Instagram, Inc. (hereinafter "Instagram), and my official title is _____. I am a custodian of records for Instagram. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Instagram, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Instagram; and

c.      such records were made by Instagram as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____        _____

Date                                            Signature

**ATTACHMENT A-3**

**Property to Be Searched**

This warrant applies to information associated with the below listed electronic accounts that are stored at premises owned, maintained, controlled, or operated by OATH HOLDINGS, INC. (d/b/a "YAHOO, INC.") headquartered at 701 First Avenue, Sunnyvale, California 94089:

      i.    waqasshah11@yahoo.com ;

     ii.    Wshah2@yahoo.com

## ATTACHMENT B-3

### Particular Things to be Seized

I.   **Information to be disclosed by OATH HOLDINGS, INC. (d/b/a "YAHOO, INC.") (the "Provider")**

To the extent that the information described in Attachment A-3 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A-3:

a.   The contents of all emails associated with the account from May 1, 2017 to March 1, 2018, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.   The types of service utilized;

d.   All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken. The Provider is hereby ordered to disclose the above information to the government.

## II.  Information to be seized by the government

Any and all records that relate in any way to the account described in Attachment A-3 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery); 18 U.S.C. § 2315 (Interstate Receipt of Stolen Property); and 18 U.S.C. §§ 1512(c) and 1519 (Obstruction of Justice), .including:

a.  All records, information, documents or tangible materials related to Affecting Interstate Commerce by Robbery or the sale of ill-gotten proceeds thereof, including the sale of any stolen cellular telephones or other merchandise; any and all communications related to the preparation for or completion of the robberies or the sale of the proceeds thereof;

b.  All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

c.  Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

d.  Evidence of the times the account was used;

e.  All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

f.  Passwords and encryption keys, and other access information that may be necessary

to access the account and other associated accounts;

    g.  Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

    h.  All existing printouts from original storage which concern the categories identified in subsection II.a; and

    i.  All "address books" or other lists of contacts.

## III. The government's search

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by _____. (hereinafter "the business"), and my official title is _____. I am a custodian of records for the business. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of the business, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of the business; and

c.      such records were made by the business as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) and 902(13) of the Federal Rules of Evidence.

_____           _____
Date                                         Signature

**ATTACHMENT A-4**

**Property to be Searched**
**(eBay account)**

This warrant applies to records and information associated with an account associated with WAQAS ALI SHAH and e-mail address "bundslapper@aol.com" that is stored at premises controlled by eBay, an internet based e-commerce service provider headquartered at 2025 Hamilton Avenue, San Jose, CA 95125.

**ATTACHMENT B-4**

**Particular Things to be Seized**

To the extent that the information described in Attachment A-4 is within the possession, custody, or control of eBay, eBay is required to disclose the following information to the government for the accounts or identifiers listed in Attachment A-4 (the "Target Account"). Such information should include the below-described content of the subject account:

a. Subscriber Information, including the name and location, supplied by the user at the time of registration, and the date the accounts were created.

b. Records of user activity for each connection made to or from the Target Accounts, including log files; messaging logs; the date, time, length, and method of connections; information of all purchases made and all items sold; all complaints against; user names; and source and destination Internet Protocol addresses, and any telephone, instrument or other unique identifiers collected by the Target ISP and associated with the Target Accounts;

c. All information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

d. The contents of all communications stored in the account, including copies of messages sent to and from the account, draft messages, the source and destination addresses associated with each messages, the date and time at which each message was sent, and the size and length of each message;

e. Any deleted messages, including any deleted information described in subparagraph "d," above;

f. All eBay search records, including the specific terms searched in association with the Target Account, the dates, times and time zones of all searches, the IP addresses or telephone or instrument identifying numbers associated with those searches, and any data related to the results of the searches associated with the Target Account and the Target Account's use of any search results;

g. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of services utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

h. All records of method of payment for all items purchased;

i. All records showing where purchased items originated from;

j. All records describing the items purchased by the TARGET ACCOUNT to include original pictures of the items when they were listed for sale on eBay;

k. All records of Paypal account information for any purchase in which Paypal was used in the purchase of an item by the TARGET ACCOUNT;

l. All records or other information stored by an individual using the accounts;

m. All telephone or instrument numbers associated with the Target Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated

Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

n. All wire and electronic communications held or maintained by the eBay at any time; and

o. All records pertaining to communications between WAQAS SHAH and any person regarding the account, items sold or purchased by WAQAS SHAH.

## Information to be seized by the government

Any and all records that relate in any way to the account described in Attachment A-4 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery); 18 U.S.C. § 2315 (Interstate Receipt of Stolen Property); and 18 U.S.C. §§ 1512(c) and 1519 (Obstruction of Justice), .including:

a. All records, information, documents or tangible materials related to Affecting Interstate Commerce by Robbery or the sale of ill-gotten proceeds thereof, including the sale of any stolen cellular telephones or other merchandise; any and all communications related to the preparation for or completion of the robberies or the sale of the proceeds thereof;

b. All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

c. Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

d. Evidence of the times the account was used;

e. All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

f.  Passwords and encryption keys, and other access information that may be necessary to access the account and other associated accounts;

g.  Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

h.  All existing printouts from original storage; and

i.  All "address books" or other lists of contacts.

**Search Protocol**:

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.